The court will come to an order on the next case, Epel v. Hovis. Justice Chapman, it should be noted, is not able to be here today, but she will be participating, reading the briefs and listening to the arguments. So please be careful to speak up for the microphone to pick up what you say. You may proceed, counsel, for the appellate. May I please the court, counsel? My name is Elizabeth Brody, and I represent Mr. Hassan Hovis in this matter. On February 12, 2013, Isaiah Garcia asked Hassan Hovis to give him a ride to go pick up some money. Mr. Hovis told him he didn't have gas, and after Garcia told Mr. Hovis that he would provide gas, Mr. Hovis then drove them from the apartment complex where they both separately lived to the gas station and then drove Mr. Garcia to the hospital where he met a man. Instead of getting out, that man, Mario Hernandez, got into the car, they drove around the block, and then instead of Mr. Hernandez turning over money owed to Garcia, Garcia actually sold him one gram of cocaine. Now, the record shows that Mario Hernandez was a confidential informant involved in a months-long investigation by a task force of Isaiah Garcia. The state then charged Mr. Hovis with delivery of cocaine via accountability. The only issue at trial was whether Mr. Hovis had the requisite knowledge that Garcia would sell cocaine to Hernandez and therefore could be held accountable. Both issues on appeal address elements of that knowledge component. First, the trial court erred in granting the state's motion to admit other crimes evidence to show that knowledge. Specifically, the state admitted an exhibit that was ultimately 44 pages long, containing 105 text messages and 112 Facebook messages found on Mr. Hovis' phone that were between Mr. Hovis and other third parties purportedly referencing marijuana sales. These messages were not relevant and were extremely prejudicial and should not have been admitted at trial. The second issue is that even with these text messages, the state failed to prove beyond a reasonable doubt that Mr. Hovis had the requisite advanced knowledge to show that he knew that Garcia intended to sell cocaine to Hernandez in order to be accountable for Garcia's actions. First, when dealing with other crimes evidence, it is not admissible to prove bad character to show action and conformity therewith. It's not allowed in this case specifically to show propensity. Yet the state's arguments to the trial court and the state's arguments at trial to the jury show that that is precisely why it was admitted in this case. In pretrial proceedings, the state says to the court, on numerous, numerous, numerous occasions, Mr. Hovis was contacted by individuals looking for cannabis. They say to the court, Mr. Hovis has no prior criminal history. So the state is facing a situation where Mr. Hovis could take the stand unimpeachably and testify on his behalf or not. The issue is what view of Mr. Hovis the jury is going to see. Are they going to see Mr. Hovis as a babe in the woods who's trying to help out a guy that he knows a little bit and then continues? Or are they going to see Mr. Hovis, a guy who regularly deals small amounts of cannabis, giving a fellow drug dealer a ride to a drug deal? So they're arguing to the court, this is relevant to show he's a drug dealer. And they pick up on this theme in opening and closing arguments as well, creating a dichotomy. Either Mr. Hovis is a nice guy or he's guilty in this case. That's clear character evidence and that's impermissible. Again, they argue in opening to the jury, either he was a nice guy helping a friend out or he was a knowing participant in a cocaine delivery. They say the jury has to decide, was he just a nice guy or did he help in this delivery of cocaine? In closing, we have even more direct references to character and they tie it specifically to these text messages. They say, you might still be saying Mr. Hovis is a nice guy who is helping a buddy out for a ride. You'll have a chance to look at People's Exhibit No. 5, those text messages. And then they go on to say, again, Mr. Hovis is not a babe in the woods. He's not a fellow who fell off the turnip truck and gave his good buddy a ride. He's integrated in this lifestyle. He's part of this community. And again, his immersion in this culture is what they argue should show that he is guilty in this case. Now, turning to the specific text messages. Again, not only can these not, other crimes evidence not be admissible purely to argue character, we have a situation where there's no threshold similarity between the supposed other crimes discussed in the text messages and the incident involving the charged conduct. So the text messages say things like, need any green? Do you have pot? Will you sell me a dime? Will you sell me a bud? So talking about small amounts of marijuana. The charged conduct here is accountability for delivery of cocaine. Now, telling is the trial court's finding where the trial court talks about extremely broad strokes of similarity. These are both illicit drugs. And further goes on to say, they show there was a vehicle involved and that you go to a location. Those are exceedingly general and do not meet the specificity required of other crimes evidence. But more importantly, those show an error of the trial court because the text messages do not show that there was a vehicle involved. There are only two casual mentions of the vehicle. And both of those, in one instance, someone texts Mr. Hobus and says, I've got my dad's truck so I can come to you. And the other one is asking for a ride, which Mr. Hobus declines. And that does not appear necessarily to be a drug transaction. And beyond the just extreme generality of you go to a location, there's no indication that Mr. Hobus met people at a location for drug transactions. Now, again, none of these messages involve Isaiah Garcia, the person who delivered the cocaine. None of them involve the confidential informant who received the cocaine. None of them talk about Mr. Hobus driving someone to a drug deal. None of them talk about cocaine. So we have no similarity between the text messages and the crime charged in this instance. So there's no connection here showing relevance. Conversely, there's an extreme amount of prejudice caused by this exhibit. We've got a 44-page exhibit with, you know, well over 100 messages talking about marijuana that is then argued to the jury. Well, this guy's involved in drug dealing so he must have been guilty here. So there's no logical connection here. And there's simply the prejudice of, hey, this is a bad guy. Go ahead and convict him. And that is precisely the sort of inference that is not permitted. And it's the sort of reason that this evidence is typically excluded. Now, the state would have you find that this was harmless error. There are a number of things I'd like to point the court's attention to. First and foremost, in arguing the necessity of this evidence, the trial prosecutor says to the court, Mr. Hobus' knowledge is not subject to proof by other means. Post-trial, they tell the court, we're not going to say this wasn't important. It was, in fact, one of the three legs on a tree like a stool was the analogy they used. So this is clearly a very important part of their case and was argued to the jury as such. Further, even with this evidence, we don't get past reasonable doubt. We have – there's very limited probative value of this. Again, we're talking about marijuana versus cocaine. None of the same parties. And no proof, no external proof of these drug transactions that showed any similarities. You know, could have, might have, probably knew. That is not proof beyond a reasonable doubt that Mr. Hobus knew in advance of this drug deal sufficient to find that he was – that he was accountable in this case. And the trial court ruling here, again, shows that there was not a careful – a careful finding of let's limit the number of text messages, let's just pick out a few of these. Even if the state's urging that, oh, this is a lot, certainly the trial court would be well within its rights to limit these amounts. So this is not harmless error, and it is – and it is certainly not a careful use of discretion by the trial court. And for those reasons, we ask that Mr. Hobus' conviction be reversed outright, and alternatively that he – his conviction be reversed and that he be granted a new trial. Thank you. Thank you, counsel. You'll have an opportunity for the public – counsel for the appellate. Thank you, Your Honor. Your Honors, counsel, may it please the court. What did Hassan know, and when did he know it? This is the question that defense counsel urged the jury that it must find the answer to. At trial, the defendant argued he had no idea that a drug deal was going to occur in his car. To overcome that, the state sought to introduce Facebook and text messages from the defendant's phone to help show his knowledge. The evidence was certainly relevant to overcome the defense that was raised concerning lack of knowledge. And in Illinois, under the rule of Evidence 401, evidence is relevant if it has any tendency to make the existence of a fact that is of consequence more or less probable than it would be without the evidence. In addition, Rule 404B states that evidence of other crimes, wrongs, or acts, though not admissible to show propensity, may be admissible for other purposes such as opportunity, intent, preparation, plan, knowledge, or absence of mistake. And here, the state disagrees with the assessment of the trial court's evaluation of the evidence. The trial court actually properly weighed what was contained in those Facebook and text messages and found their prejudicial effect did not substantially outweigh the probative value. In any criminal case, almost all evidence is prejudicial. It isn't just enough to establish that it's prejudicial. It has to be the prejudicial effect substantially outweighs its probative value. In her order, Judge Custer found the text messages show a similarity in the transactions that occurred in these circumstances. They show there was a vehicle involved, that you go to a location, and you even make a comment in your statement. And this is in reference to the defendant's admission right after the drug drop. You even made a comment in your statement that you knew it was cocaine, that there was one bag of coke that was exchanged. It was $100 to $150. I believe that the transactions are similar. They are admissible for the purpose of showing knowledge. And the prejudicial effect of this evidence does not substantially outweigh its probative value. Clearly, the court understood what was to be weighed here. And this court should find no abuse of discretion in the trial court's decision to allow the state to introduce the phone messages to overcome the defendant's assertive lack of knowledge in this case. The threshold for abuse of discretion is high. And it should not be found where the ruling was not arbitrary, fanciful, or unreasonable. In this case, it was not. In addition, the jury was properly instructed that the Facebook and text messages can only be considered on the issues of intent and knowledge. But even if this court is of the opinion that it was error for the court to have admitted the text messages and the Facebook messages, that error is harmless. In his reply brief, the defendant points out the state incorrectly identified that there were 19 messages between defendant and Garcia contained in that state's Exhibit 5. The state certainly appreciates this by the defense and agrees that it was not contained in the Exhibit 5. It was actually defense counsel's questioning on cross-examination of the police investigator that established there were 19 text messages between defendant and Garcia. And these, again, were not contained in Exhibit 5. These 19 messages established prearranged rides between defendant and Garcia with language like, hey, come pick me up, and I'm ready to roll, bro. And this appears to the state to support its argument that the jury verdict would have been the same without the admission of the exhibit. These 19 not being in the exhibit and defense counsel's questioning established this ride sharing between defendant and Garcia. In addition, in the audio of defendant's interview, which was not objected to by the defense, the jury heard the defendant explain that he drove Garcia to the hospital parking lot in exchange for money for gas, and that while he was in the front seat of the car, Garcia made the drop in the back seat of the car. He admitted that in addition to witnessing Garcia sell drugs in the past, that he also had purchased cannabis from Garcia 15 times. Defendant also, again, told the police the price range for the drug deal, that he knew it was one gram of cocaine, and all of this was volunteered. The defendant was stopped immediately after this deal was made. He drove over to the stoplight, and that's when the stop occurred. He didn't have a chance to make anything up. He was asked all of this. So all of this had to show knowledge on his part of what went on in the back seat of that car. And just 10 minutes into the deliberation, the jury asked to have the audio of defendant's interview played again. It's a seven-minute interview. And after hearing the defendant discuss the details surrounding that drug drop, the jury only took 52 minutes to arrive at its verdict. The state believes this establishes that the jury verdict would have been the same without the Facebook and text messages. And the evidence as a whole between the Facebook and text messages and the defendant's admissions that he made in that interview established circumstantial evidence of defendant's accountability and knowledge of the delivery of the controlled substance. It's very rare in a case where you can prove a defendant's knowledge by direct evidence. It's almost always by circumstantial evidence, and that's what occurred here. In his reply brief, the defendant seems to argue that inferences should be made in his favor, but that is not what happens on appeal. The jury verdict is entitled to grade the weight, and the evidence is to be viewed in the light most favorable to the state. It is the jury's responsibility to weigh the evidence and to draw reasonable inferences from the facts. How do you respond to the argument about the defendant that the text messages only referred to marijuana? Is there anything in there about cocaine in the text messages? There is not a single that I was able to find. There wasn't anything in the text messages about cocaine specifically. The state's response to that would be that the state, in order to prove accountability for delivery of a controlled substance, does not have to prove defendant knew what that substance was, just that it was a controlled substance. Secondly, the state has cited numerous cases in its brief, in particular the Watkins case out of the 3rd District, that discussed that the difference between the type of controlled substance, if it's cocaine and marijuana, in that case specifically referred to the two, that there was enough of a threshold similarity between the two that would be sufficient for the court to allow that. So the evidence and testimony supports the jury's reasonable inferences here, and the state respectfully asks this court to affirm the jury's verdict. Thank you, counsel. Brief up. Thank you, Your Honor. First, there is no, to repeat back to your question, there are no references to cocaine. There's no testimony that there were references to cocaine. There's no testimony that Mr. Hovis had any prior involvement in cocaine. There's no testimony from Garcia at trial. There's no statement from Garcia. There is no testimony from the informant at trial. There is no testimony from anyone who could see into the vehicle. Mr. Hovis was not found with any of the controlled by money. There's nothing that ties into this. The state says, oh, well, he says he knew what was going on. Being able to tell the police, I witnessed this thing, I saw that there was a gram of cocaine, you know, in a five-minute statement, that doesn't say, oh, I definitely knew ahead of time that this was going to happen versus I saw this happening versus I saw it was $100 to $150. That doesn't show us that he knew the deal was going to happen before it happened. He's not even able to give the dollar amount. The state points to the trial court ruling saying there's discretion here. Again, saying a vehicle is involved and that you go to a location, those aren't areas of similarity. Those are just so extremely general that they don't tie these two incidences together. Further, they don't actually apply to the text messages. So let's turn to the other distinct difference. The trial court glosses over the difference between cocaine and marijuana, and the state cites two Watkins. Watkins has a number of notable differences, as do the other cases cited by the state. In Watkins, this was a prior conviction, so it first has a greater degree of probative value because we know it actually happened. It's not just general references in text messages. Next, the prior conviction involved another offense where the defendant in Watkins had been in possession of a drug with the intent to deliver it, so it was the same type of crime versus selling small amounts of marijuana and, in this case, driving someone to a drug deal. Next, there was careful discretion on the part of the trial court in Watkins to exclude other instances of other crimes evidence and to instruct the jury both at the admission of the evidence and at the conclusion of trial. Perhaps the most notable issue in Watkins that distinguishes it from this case is that the cocaine in that case that resulted in the charge was found in the presence of marijuana. So when you've got cocaine and marijuana together, other evidence of marijuana or cocaine is going to tie you to that dual drug much more so than small amounts of marijuana to cocaine. Watkins also relies on a federal case, Hernandez, which similarly says the difference in Hernandez between cocaine and marijuana was not dispositive in that case. But again, in that case, you've got kilos of cocaine, 100 grams of heroin, and the prior crime is 43 pounds of marijuana. So we're not talking about small amounts of marijuana and then someone increasing their risk level to be involved in cocaine. Again, we have no specific, and just briefly, the text messages referenced, we do have testimony about text messages. We have no specifics about the ride situation. They generally refer to 19 text messages likely involved on the day, and 30, he says, I'm not sure, but we probably had 30 over the course of the phone between these two gentlemen. That does not establish a pattern of ride sharing. Further, despite the state's assertion in its brief, that does not establish a pattern of rides to drug deals. There's no evidence of prior drug dealing between the two. In his statement, Mr. Kovitz says, I saw him sell to someone else in a park. Not that we went to the park together, not that we were there together, just I saw him sell some unknown drug to someone else in a park. That's the only other than him purchasing personal use amounts from Garcia. That's their only drug connection. So none of these things are established. And even if we did have that pattern established, some knowledge that this guy has previously sold drugs doesn't establish that Mr. Kovitz knew on this occasion that, hey, pick me up to go and pick up some money means I'm going to sell cocaine. So- Can you finish your statement? Just in conclusion, we do not have proof beyond a reasonable doubt. We simply have maybes and unestablished inferences, and that's not sufficient. Thank you. Thank you, counsel. This case will be taken under advisement and a decision will be rendered in court.